UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ROBERT TAYLOR,<br><br>                    Plaintiff,<br>       v.<br><br>GCI LIBERTY, INC., a/k/a GENERAL COMMUNICATION, INC.; and EASTERN ALEUTIAN TRIBES, INC.,<br><br>                    Defendants. | CASE NO. 2:19-cv-02029-LK<br><br>ORDER GRANTING UNITED STATES' *EX PARTE* APPLICATION FOR EXTENSION OF TIME TO CONSIDER ELECTION TO INTERVENE<br><br>**FILED UNDER SEAL** |

This matter comes before the Court on the Government's fifth *ex parte* application for an extension of time to consider whether to elect to intervene. Dkt. No. 19. Having considered the Government's application and the relevant record, the Court GRANTS the Government's application for a six-month extension of time to September 26, 2022.

### INTRODUCTION

In December 2019, Relator Robert Taylor filed a complaint under seal against GCI Liberty, Inc. and Eastern Aleutian Tribes, Inc. under the qui tam provisions of the False Claims Act

ORDER GRANTING UNITED STATES' EX PARTE APPLICATION FOR EXTENSION OF TIME TO CONSIDER ELECTION TO INTERVENE - 1

("FCA"), 31 U.S.C. §§ 3729–33. Dkt. No. 1. Following four extensions of time, the Government's deadline to elect whether to intervene in the action was March 24, 2022. Dkt. Nos. 5, 7, 11, 17. On March 22, 2022, the Government moved for another six-month extension of time. Dkt. No. 19. According to the Government, Relator concurs with this extension request. *Id.* at 1.

**DISCUSSION**

"In FCA cases initiated by a private relator, the Government has an unfettered right to intervene within 60 days after service of the complaint and all material evidence the relator possesses, with extensions of the period for intervention available for good cause." *United States v. Acad. Mortg. Corp.*, 968 F.3d 996, 1008 (9th Cir. 2020) (citing 31 U.S.C. § 3730(b)(2)–(3)). The FCA does not define "good cause." Nor has the Ninth Circuit passed on the precise height of the "good cause" hurdle. And although other circuits have provided some guidance, there is no bright-line test. *Compare United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835, 846 (7th Cir. 2020) (noting that "good cause" is a "uniquely flexible and capacious concept" and requires "a legally sufficient reason" (citing *Good Cause*, Black's Law Dictionary 101 (4th pocket ed. 2011))), *with Am. Civ. Liberties Union v. Holder*, 673 F.3d 245, 254 (4th Cir. 2011) ("Of course, the 'good cause' standard in section 3730(b)(3) is the same standard contained in Rule 26 of the Federal Rules of Civil Procedure, which permits a federal court to require that certain matters be sealed.").

The Government does not attempt to define "good cause." Instead, and as it has in each of its previous four motions for an extension, Dkt. Nos. 4, 6, 10, 16, the Government argues that the FCA "expressly contemplates the United States obtaining extensions of time to make its intervention decision in *qui tam* actions." Dkt. No. 19 at 6. Such an extension, the Government contends, is "contemplated by, and consistent with, the express terms of the FCA." *Id.* The Court agrees; however, § 3730(b)(3) does not create an unfettered right to rubber-stamp extensions. *See*

FILED UNDER SEAL - 2

*United States ex rel. Kalish v. Desnick*, 765 F. Supp. 1352, 1355 (N.D. Ill. 1991) ("[T]he requirement that good cause be shown for an extension of time to be granted is not the equivalent of routinely allowing extensions of time."). As one district court warned, "courts considering extension requests should be wary of the *ex parte* nature of such requests, and the ease by which a case can slip into a 'comfortable routine' of a request followed by another request: the results can amount to significant abuses of the statutory scheme." *United States ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396, 401 (E.D. Pa. 2018) (quoting *United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.*, 912 F. Supp. 2d 618, 625 (E.D. Tenn. 2012)).

When Congress added the (b)(3) extension provision to the FCA, it "expanded the government's ability to intervene" and "increased . . . executive control over qui tam lawsuits." *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1144 (9th Cir. 1998). Again, however, increased control is not synonymous with automatic or limitless extensions. The Senate Report makes clear that Congress intended courts to "weigh carefully" and "carefully scrutinize" Government extension requests because, "with the vast majority of cases, 60 days is an adequate amount of time to allow Government coordination, review and decision." S.Rep. No. 345, 99th Cong., 2d Sess. 24–25 (1986). *See United States ex rel. McCoy v. Cal. Med. Rev., Inc.*, 715 F. Supp. 967, 968 n.1 (N.D. Cal. 1989) ("The legislative history further indicates that requests for extensions under section (b)(3) . . . are not to be automatically granted.").

Whatever "good cause" might mean, the Government suggests that it has met that standard here because a six-month extension is "necessary to permit the United States to continue to conduct a thorough investigation of all Relator's allegations and reach an informed decision on whether to intervene in this matter." Dkt. No. 19 at 5. Over the course of its investigation, the Government has interviewed and re-interviewed Relator, issued a Civil Investigative Demand ("CID") to GCI Liberty, Inc., "made meaningful progress" in reviewing 85,000 pages of relevant or responsive

documents, and collaborated with the Federal Communications Commission "to potentially resolve the investigation." Dkt. No. 19 at 5. The Government contends that it needs six more months to "continue its review of materials" produced in response to the CID or relating to the new claims in the Second Amended Complaint. *Id*. The Government will also "use the additional time to continue its dialogue about a potential global resolution." *Id.*

The Court recognizes that Relator's Second Amended Complaint contains roughly six pages' worth of new factual allegations, *compare* Dkt. No. 2 *with* Dkt. No. 15, and that it takes time to review voluminous records. However, the Government has been investigating the core allegations of this case since December 2019. Dkt. No. 4 at 2, 4. And it has been investigating the new allegations in the Second Amended Complaint since June 2021. Dkt. No. 16 at 2. The Court cautions that it will not allow this case to slip into "a 'comfortable routine' of a request followed by another request[.]" *Brasher*, 338 F. Supp. 3d at 401 (quoting *Martin*, 912 F. Supp. 2d at 625).

## CONCLUSION

The Court accordingly GRANTS the Government's *Ex Parte* Application for an Extension of Time to Consider Election to Intervene, Dkt. No. 19, and ORDERS the Government to notify the Court whether the Government will intervene by September 26, 2022. The Clerk is DIRECTED to maintain the Second Amended Complaint, this Order, and other filings in this matter under seal until further order of the Court.

Dated this 28th day of March, 2022.

Lauren King
United States District Judge